Parker, C. J.,
delivered the opinion of the Court. The question in this case is, whether, as between these parties equally innocent and ignorant, the loss shall remain where the chance of business has placed it, or shall be shifted back upon the Salem bank, who may be considered as having, by good fortune, rid themselves of it.
In all such cases, the just and sound principle of decision has been, that if the loss can be traced to the fault or negligence of either party, it shall be fixed upon him. Generally, where no fault or negligence is imputable, the loss has been suffered to remain where the course of business has placed it.
The case of Price vs. Neale is the most prominent among the cases of this kind ; and Lord Mansfield pronounced it a very clear case. Neale, the defendant, was the innocent and bond fide holder of a bill purporting to have been drawn by one Sutton on Price. He notified Price of it, who immediately sent his servant to pay the bill, and take it up, which he did. Neale held another bill pur porting to be drawn by the same Sutton on Price, payable in six weeks; which, on being sent to Price, was accepted by him, and was afterwards paid. The name of the drawer was forged on both bills ; and the action was brought by Price, to recover the money paid on both. He failed in his suit, because it was not permitted, that an innocent sufferer should throw his loss on one equally innocent ; and because (which Sewall, J., thought, as he stated in the case of Young vs. Adams, was the principal reason), there was negligence on the part of Price in paying one bill, and accepting and paying the other, without scrutinizing the handwriting of the drawer; with which, it was presumed, he was acquainted. And Chief Justice Kent adopted the same oninion in the case of Markle vs. Hatfield.
*34 [ * 43 ] * There seems to be nothing in the doctrine here laid down, so unreasonable as to make the case a questionable one. It would seem to be a principle of natural justice, that where a loss has happened, he, through whose means it happened, should sustain it, although innocent, rather than he, who is not only innocent, but wholly without imputation of negligence. And there are no cases since decided, which militate with this principle in England. If a man will accept a forged bill of exchange, when . presented to him by a bona fide holder ignorant of the forgery, he shall be bound by his acceptance. And this has been the law, ever since the case of Jenny vs. Fowler, cited from Strange, the principle of which has been recognized and acted upon in many nisi prim cases in very recent times, as may be seen by the following cases read at the bar.—2 Campb. 456.—6 Taunt. 76.—3 Esp. 60.—4 Esp. 226.
In the case of Young vs. Adams, Sewall, J., treats the case of Price vs. Neale as undoubted law.
Some cases varying from that, but still having a strong resemblance to it, have occurred, which, without reason, have excited some doubts whether the doctrine is now adhered to. Such is the case of Jones vs. Ryde & Al., and the case just mentioned of Young vs. Adams. In these cases, the plaintiffs were permitted to recover the contents of false securities, against those who had innocently paid or delivered them. But the distinction taken by Sewall, J., in the latter case, is the true one, viz., that in those cases the parties did not pay money upon contracts supposed to be their own, and which they were bound to know, but received, in discharge of another contract, something which purported to be of value, but which was worth nothing. And in conformity with this principle, it has been decided in New York, and in this state, that if a man pays a debt with counterfeit money, he shall be held to make it good; although he received and parted with the notes as good.—2 Johns. 455.— 5 Mass. Rep. 182; and in England, in 5 Taunt. 488. [ * 44 ] * And now we are to consider, whether the facts in the case before us bring it within the principle of Price vs. Neale, and the cases which have been governed by that; or of the other cases of payment in spurious notes, to discharge an antecedent contract, or for the purchase of bills of exchange or other marketable commodities. And we think the former principle must be applied.
When the cashier of the Salem bank delivered the bundle of notes to the cashier of the Gloucester bank, as the delivery was not at the bank, nor in banking hours, and was accompanied with a declaration that they were good bills, a reasonable time should have been allowed to count and examine them. Had this been done *35 the next morning at the Gloucester bank, and the notes been immediately returned, or a tender of them made, there can be no doubt an action might have been sustained. For the notes could not be considered as received in payment, until there had been an opportunity to examine and count them. The circumstances, under which they had been received by Mr. Mansfield, would not have hound the Gloucester bank to take the risk of their being good.
But on the 11th of February, they were received by the cashier of the Gloucester bank, counted by him, and placed in the vault; and no notice taken of them until the 26th of February, fifteen days after they were received; and even then nothing done, but an offer to the cashier of the Salem.' bank to examine them, who declined; and they thus remained, without any express disavowal of them by the Gloucester bank, until the 31st of March. Here, we think, was a degree of negligence, which takes away all right to call on the defendants to make good the notes. There was an actual adoption of them by the Gloucester bank as their own notes, through their cashier, who, acting in the course of business intrusted to him, of which paying and receiving notes is a principal, part, must be considered as representing the bank in this transaction.
* The consequence of making the Salem bank answera- [ * 45 J ble, under such circumstances, would be very mischievous. Men would never feel safe in suffering bank notes to pass through their hands, if they were liable to be called upon, several weeks after, to make good such as might be discovered to be spurious. Even when passing a bad note, in the ordinary course of business, to pay a debt, a delay of a month or a week, in making the demand, would throw a suspicion upon the case, and make it difficult to recover. But when a debt is paid to a bank, in notes purporting to be their own, and which they have the best means of detecting, if spurious, nothing short of immediate notice to the payer, and demand of him for payment, could authorize them to maintain an action for the money. A party thus called upon has a right to call upon him from whom he received the notes, and this latter upon the one behind him, &c., until they are traced back to him who forged them.
But there must be some limitation to the right in point of time, or the whole community would be in commotion. And the true rule is, that the party receiving such notes must examine them as soon as he has opportunity, and return them immediately. If he does not, he is negligent, and negligence will defeat his right of action.
This principle will apply in all cases where forged notes have *36 been received; but certainly with more strength, when the party receiving them is the one purporting to be bound to pay. For he knows better than any other, whether they are his notes or not; and if he pays them, or receives them in payment, and continues silent, after he has had sufficient opportunity to examine them, he should be considered as having adopted them as his own.
It has been said in argument, that notice was given to the Salem bank, as soon as the notes were found to be counterfeit, and that an intimation was given, as early as the 26th of February, that they were questionable. But it was then too late. Fifteen days before, the Gloucester bank had received notice, that some fraud [ * 46 ] had been practised * upon their notes; and their fears were so strong, that they thought it necessary to close the doors of their bank; and in all this time no examination was made of the notes in question, nor any intimation given to the Salem bank that they were not genuine. The defendants then had no means of looking up those from whom they had received the notes; and although there is no evidence in the case from which it can be ascertained that they could have saved themselves, if they had received earlier notice, the law itself will presume that a change of circumstances had taken place, which would justify them in resisting the action.
If it be said that the question, whether there has been unreasonable delay or negligence, is a question of fact for the jury, the answer is, that a judge, on the facts in this case, would be bound to instruct the jury, that, in point of law, there had been negligence; so that a new trial would be altogether fruitless.

Motion overruled.