Burrill *v.* Watertown Bank and Loan Company.

————•••————

BURRILL *vs.* THE WATERTOWN BANK AND LOAN COMPANY.

The defendants' bank, having on the first day of July, 1863, paid out to the plaintiff's agent a counterfeit bill, purporting to be issued by the Waterbury Bank, of Connecticut, and the agent having neglected to return it for redemption until the 17th day of September following; *Held* that if the duty rested upon the plaintiff to return the bill and notify the bank of the forgery, within a reasonable time after its discovery, the question of negligence, under the circumstances of this case, was for the jury to decide.

Where the plaintiff was in doubt, and had no ready means of detecting the forgery; *Held* that the duty of returning the bill immediately was not absolute, although its genuineness had been questioned; and that the duty of returning forged paper, in such a case, must begin, if at all, from the time the holder has what the jury shall deem satisfactory evidence of its spuriousness.

The plaintiff's agent having paid out the bill to a third person, supposing it to be genuine, and such third person having neglected for an unreasonable time, after being informed that it was counterfeit, to return it to the agent; *Held* that the defendants' bank could not avail itself of such third person's neglect, to defeat the plaintiff's action.

The defendants, being informed by the plaintiff's agent, on the third day of August, that the bill had been questioned and returned to him, but that he had paid it out again, promising to take it back if it should prove to be a counterfeit, made no answer whatever. *Held* that the jury might find, upon

the evidence, that the defendants' bank had acquiesced in this disposition of the bill and thereby waived an immediate return thereof.

The decision in *Thomas* v. *Todd*, (6 *Hill*, 340,) requiring a creditor who takes forged bank paper in payment of his debt, to return or offer to return it to his debtor, before he can maintain an action upon his original demand, questioned. *Per* MORGAN, J.

Mere formal defects in the return of a commission will not be regarded on the trial.

APPEAL from the order of Justice MULLIN, denying a motion for a new trial. The plaintiff had a verdict, and a motion was made upon the judge's minutes for a new trial. The motion having been denied, leave was obtained by the defendants to make a case and exceptions; and the entry of the judgment was stayed until the hearing and decision of the appeal from the order denying the new trial.

The action was brought to recover the amount of a counterfeit bank bill for $100, purporting to be issued by the Waterbury Bank of Connecticut, paid out by the defendants to the plaintiff's agent, William G. Pierce, July 1, 1863. Pierce paid it out the next morning, to Lyman Wilson, Jr. who on the same day paid it out to his father, Lyman Wilson, Sen. The latter took it to the Jefferson County Bank, to the Union Bank and to Wooster Sherman's Bank—three banks located at Watertown—on the 11th of July, all of which banks declined to receive it. He then took it to B. F. White, who was in the employ of Pierce, (the plaintiff's agent,) told him he had offered it to the banks and they had refused it. White directed him to take it to Mr. Cook, a merchant, and he would give him small bills for it. He did so, and Cook took it and gave him small bills for it. Cook on the 22d of July sent it to the Jefferson County Bank, where it was again refused, and within about a week returned it to Wilson, informing him that it had been refused at the bank. Wilson then returned the bill to his son, and his son returned it to Pierce, the plaintiff's agent, with information that it had

Burrill *v.* Watertown Bank and Loan Company.

been refused at the banks. Pierce examined the bill by a detector, thought it was good and paid it out again to William Baum. That was on the third day of August. Wm. Baum, within five or six days after, sent it to the Union Bank of Watertown. It was received by the bank upon deposit and paid out by the teller on the 10th day of August, to Aaron C. Cady, who paid it out to Levi A. Johnson. Johnson deposited it in the Wooster Sherman Bank, and the latter sent it to the State Bank of Albany. It was returned by mail and the Wooster Sherman Bank gave it back to Johnson. The latter returned it to Cady, and Cady returned it to the Union Bank. The latter bank returned it to Baum, who shortly after returned it to Pierce, the plaintiff's agent. This was some time in the fore part of September. On the 17th day of September, Pierce presented it to the defendants for redemption, which was refused, and thereupon he brought this suit to recover the amount of it.

There was evidence tending to show that when Lyman Wilson, Jr. returned the bill to Pierce on the 3d of August, the latter, on paying it out to William Baum, informed him that it had been questioned, and requested him to bring it back to him if it was not good. The plaintiff then was permitted to prove that the next morning after receiving the bill back from Wilson, he communicated to the cashier of the defendants' bank the fact that the bill had been returned to him questioned, that he had examined it by a detector, and thought it good, and had passed it to Baum with a request to return it to him if rejected, and that he would then return it to the bank. This evidence was objected to, but received by the judge, to which the defendant took an exception. The witness stated that the cashier made no reply when he told him the circumstance.

The defendants requested the judge to charge the jury that the negligence of Lyman Wilson enured to the bene-

fit of the defendants, if they found that he was negligent; which request was refused by the judge, to which the defendants' counsel excepted.

The defendants' counsel also requested the judge to charge the jury that the transfer of the bill by Pierce on the 3d of August, and the omission to tender a return to the defendants for so long a time, was such negligence as to deprive the plaintiff of the right of recovery as against the defendants. This was declined, to which the defendants' counsel excepted.

The judge charged the jury, in substance, that to entitle the plaintiff to recover, he must establish not only that the bill was counterfeit, but that he returned or offered to return it to the defendants in a reasonable time after he ascertained that it was not genuine; that negligence was not imputable to the plaintiff until he ascertained that the genuineness of the bill was disputed. To these instructions the defendants' counsel excepted. The judge further charged, in substance, that the plaintiff, having received the bill from Wilson on or about the first of August, with notice that it had been rejected by the bank, it was his duty promptly to have returned it to the defendants; that it was for the jury to determine whether the cashier of the defendants' bank, by his silence, assented to what Pierce had done in passing the bill again to Baum on the 3d of August, under the circumstances described by him, and whether Pierce had a right to believe that an immediate return was not insisted on, but that he might return it to the defendants' bank when it was returned to him by Baum. If so, then the *non*-return would not defeat the plaintiff's right to recover. To which instruction the defendants' counsel excepted.

The judge further charged that Pierce was not required to return the bill until he had notice that it was bad, and that it was important to ascertain the time when he had such notice; that mere rumor was not sufficient, but the

Burrill *v.* Watertown Bank and Loan Company.

information must be such as would lead a prudent man to doubt its genuineness. To this instruction there was also an exception.

The judge further charged the jury that if after the bill was returned by Baum to Pierce, he kept it an unreasonable length of time, then the plaintiff could not recover.

The defendants' counsel asked the judge to charge the jury that Pierce had sufficient notice to apprise him the bill was bad. This was declined, to which there was an exception. There were other exceptions to the charge which are not deemed material.

The defendants also took exception to the return of a commissioner for the examination of witnesses, which are sufficiently noticed in the opinion of the court.

*L. H. Brown,* for the appellant.

*James F. Starbuck,* for the respondent.

*By the Court,* MORGAN, J. It is a general principle of the common law, that upon the transfer of notes in the usual course of dealings, there is an implied warranty that they are genuine. So if a forged note is given in payment of an antecedent debt, the law will disregard it and allow the creditor to recover the original demand. In case, however, of the acceptance of a bill of exchange, which is forged, the acceptance is regarded as an adoption of the signature of the drawer; and when forged bank notes are received as payment by the bank issuing them, the same rule prevails, as the bank is supposed to know the genuineness of its own paper. Thus in the case of the *Gloucester Bank* v. *Salem Bank,* (17 *Mass. Rep.* 32,) the notes were received by the Gloucester Bank from the Salem Bank in exchange for other notes which purported to have been issued by the Gloucester Bank, and the latter bank retained them fifteen days before offering to return them. Among other

things the court say : "There was an actual adoption of them by the Gloucester Bank as their own notes." This is put upon the ground, mainly, that the acceptor of forged paper cannot be heard to dispute the signature of the drawer, as against a *bona fide* holder. The court further say : "When a debt is paid to a bank in notes purporting to be their own, and which they have the best means of detecting if spurious, nothing short of an immediate notice to the payor and demand of him for payment, can authorize an action for the money." The same doctrine was held in the case of *The Bank of the United States* v. *Bank of Georgia,* (10 *Wheaton,* 333,) where the payment was made *bona fide* in its own notes, which were afterwards discovered to be forged.

It is very difficult to apply the principle of these cases to transactions between third persons who are in no wise parties to the paper and who have no ready means of detecting forgeries. In the case of forged promissory notes, it is believed that it has never been applied so as to defeat an action brought by the creditor upon the implied warranty of genuineness. It is said in *Parsons on Notes and Bills,* (2 *Parsons,* 601,) that in case of forged *bank notes,* it is certain from the cases cited and others, that the money or the goods given for them may be recovered back *at any time,* without reference to the question whether the forgery was seasonably or immediately discovered, and notice immediately given."

The late Supreme Court of this state, in *Thomas* v. *Todd,* (6 *Hill,* 340,) extended the principle so as to include third persons who could be presumed to know nothing of the genuiness of the paper, except what could be gathered from the opinions of others. The plaintiff in that case had taken a counterfeit bill in payment for rent, and it was held that he could not recover, because he neglected for nearly two months to return the bill. The judge says : "Both parties have agreed that the thing should be re-

Burrill *v.* Watertown Bank and Loan Company.

ceived in payment, and although they were acting under a mistake as to the nature or value of the thing paid, yet as the creditor has acted honestly, he can only be put in the wrong by an offer to correct the error. Although the bill had no intrinsic value, it should be returned to the debtor, so as to enable him to trace back and fall upon the person from whom he received it. And for the same reason it should be returned without unnecessary delay."

This was the view of the law taken by the learned justice on the trial of this action, and if *Thomas* v. *Todd* is to be received as authority, the exceptions must be tested by the rule there laid down.

It is material however to observe, that the bill which is alleged to be counterfeit purported to have been issued by a foreign corporation, and was so good an imitation of the genuine that it is now seriously contended by the defendants' counsel that the proofs failed to show that it was a spurious bill.

If the law makes it the duty of a party receiving a counterfeit bill in payment of a debt, to return it within a reasonable time after he has discovered that it is counterfeit, it may admit of grave question, *when* he shall be deemed to have sufficient knowledge of its character to require him to make an offer to return it.

In this case we have the evidence of the plaintiff that after the bill had been returned to him in August, he compared it with a detector and thought it was genuine. It afterwards passed through two banks at Watertown as a genuine bill, although these very banks had each rejected it upon a prior occasion.

While I am of opinion that bank bills, which pass as money, and are taken in payment as money, should be governed by somewhat different rules from other forged paper, I very much question whether it is competent for the courts to establish any such rules. In general a party

receiving payment in something of no value is not bound to return it before he is entitled to sue upon the first demand. I think the case of *Thomas* v. *Todd* stands almost alone, although its authority derives considerable force from what is said by the judges in the two cases already cited.

The doctrine established in *Thomas* v. *Todd* is, that a person who takes a counterfeit bank bill as genuine, in payment as money, *owes a duty to the person from whom he received* it, to return it without unnecessary delay, in order that it may be traced back and the loss be made to fall upon some other party.

It is obvious that in a majority of cases, some innocent third person would have to stand the loss. In case of forged promissory notes, the original forger or utterer, may be found out, and perhaps punished in addition to being made criminally responsible for the forgery. But in case of counterfeit bank bills, the original guilty parties are seldom if ever found out. So if the rule established in *Thomas* v. *Todd* should prevail in this state, the only effect of it would be to throw the loss upon some innocent third person instead of the defendant in the action.

It will also be observed that in case of doubt, there is no certain test by which the holder of a note, alleged to be counterfeit, can be satisfied of its spuriousness. In a majority of cases, the opinion of an expert might be taken with safety and perhaps acted upon ; but it is not the province of the courts to establish rules of evidence by which the conduct of individuals should be governed in such cases. It is rather the province of the legislature.

I am not satisfied that the law creates an absolute duty upon the creditor to return forged bank paper to his debtor before he is allowed to sue him upon an implied warranty of genuineness. But if there is any such duty in this case, it is not to be governed by the same strict

Burrill *v.* Watertown Bank and Loan Company.

rules which apply to the dishonor of notes and bills of exchange, in order to charge the indorser. No certain time can be fixed, when notice of dishonor must be given to the debtor. It can hardly be pretended that it is sufficient to make the duty *absolute*, because the bill has been thrown out by a single bank; and especially when, as in the case at bar, it was merely doubted and declined. The duty of returning the bill must begin, if at all, *from the time the holder has what the jury shall deem satisfactory evidence that it is spurious.* If the rule is to be admitted at all, it cannot with propriety be extended to doubtful cases, where there is no evidence of bad faith on the part of the plaintiff.

In the case at bar, there is certainly no sufficient evidence to charge the plaintiff with negligence, until he received the bill back from Wilson on the 3d of August, 1863. The testimony then is that Pierce, the plaintiff's agent, received it back from Wilson with notice that it had been disputed by the banks at Watertown; that he took it and examined it by a detector, thought it genuine, and paid it out again to Mr. Baum with a request if it was rejected, to return it; that he notified the defendants' bank what he had done with the bill, to which no reply was made. The judge left it to the jury to determine as a matter of fact, whether the defendants' bank acquiesced in this disposition of the bill, and if it did, he informed the jury that it excused the plaintiff from returning it to the bank until Baum returned it to him. In my opinion this was a more favorable view of the case for the defendants' bank than it had a right to insist upon, if the jury believed from the evidence that Pierce acted in good faith in his dealings with Baum. If he believed in good faith that it was genuine, after he had examined it by aid of a detector, he could not be charged with negligence, as a

matter of law, for not then returning it to the defendants' bank.

Although the bill had been thrown out by the banks at Watertown before Pierce received it back from Wilson, the evidence does not show that it had been pronounced a counterfeit bill by any of them. The most that can be claimed by the defendants' bank is that it had been doubted and declined. Mr. Pierce then undertook to examine it by the aid of a detector, and he testifies that he thought it genuine. It may be that this was only a pretense, and that he did not, in fact, believe any such thing. But certainly this was a question for the jury to determine, and not for the court. It was not enough that the bill had been doubted, but the question is whether Pierce believed, as he had a right under the circumstances to believe, that it was a genuine bill. The defendants' exceptions, without disputing the good faith of Pierce, required the judge to charge, as matter of law, that Pierce was guilty of negligence in not immediately returning the bill to the defendants on the third of August. In my opinion, the exception is not well taken, as the question of negligence was one for the jury, and not for the court to decide.

I do not find in the case what were the circumstances under which Pierce kept the bill after it was returned to him by Baum, before he offered to return it to the defendants' bank on the 17th of September. It appears that Baum returned it to Pierce the *fore part of September*, but the day is not stated. If it was deemed important by the defendants' counsel that the attention of the jury should have been called to this particular period of time, an appropriate request should have been made to the judge with reference to a state of facts which the jury might have found, and upon which an exception could have been taken. We do not know how long the delay was, nor the circumstances under which it occurred. If the delay was

Burrill *v.* Watertown Bank and Loan Company.

unreasonable the jury were told the plaintiff could not recover. The judge was not asked to charge what would be an unreasonable delay, nor what circumstances would excuse the delay.

If, therefore, the plaintiff is to be charged with the duty of returning the bill without unnecessary delay after it was ascertained to be spurious, there is nothing to show that this was not a proper case for the jury to determine the fact of negligence.

Another ground of objection to the verdict is, that the jury were instructed that the omission of Wilson to return the bill to White or Pierce for an unreasonable length of time after notice that it was spurious, would not avail the defendants in this action. This objection is based upon the theory that Pierce had no right to redeem the bill so as to charge the defendants, if he had a good ground of defense against Wilson, on the ground of his neglect to return it to Pierce. No authority is cited to sustain such a proposition. I am not aware of any principle upon which it can be vindicated. The plaintiff owed no duty to the defendants which required him to refuse to redeem the bill. He was not bound at his peril to refuse to redeem it for the benefit of the defendants.

I have also examined the defendants' exceptions to the depositions taken on commission. They were filed in October, 1864, a year before the trial, and were then open for the inspection of the defendants' counsel. They appear to be in proper form. The commissioner signed his name on the margin of each sheet, and this was sufficient without signing it at the bottom. They also appear to have been properly attached and certified.

Mere formal objections to the return of a commission will not, in general, be regarded at the trial; and I think the practice is a good one which requires the party objecting on such ground, to move the court, before the trial,

to suppress the deposition in order to avail himself of them.

The order denying a new trial in this case should be affirmed, with costs.

BACON, FOSTER and MULLIN, JJ. concurred in the result.

New trial denied.(*a*)

[ONONDAGA GENERAL TERM, January 1, 1867. *Morgan, Bacon, Foster* and *Mullin*, Justices.]

(*a*) See *Kenny* v. *First National Bank of Albany*, (50 *Barb.* 112,) where the opinion follows the authority of *Thomas* v. *Todd*, although the point was not directly involved. Two cases are cited from our own reports in addition to *Thomas* v. *Todd*. One of them, (*Markle* v. *Hatfield*, 2 *John*. 455,) is decided upon grounds apparently inconsistent with the doctrine declared in *Thomas* v. *Todd*; for it holds the naked proposition that the receipt of forged bank paper is no payment, but the party to whom it is paid may treat it as a nullity and resort to the original contract. The other case cited is *The Canal Bank* v. *The Bank of Albany*, (1 *Hill*, 287,) where the plaintiffs' bank was allowed to recover back money advanced to the defendants' bank on a forged draft, although notice of the forgery was not given for more than two months. Cowen, J. said he was not willing to concede that delay, in the abstract, as seems to be supposed, can deprive a party of his remedy in such a case. The cases cited by him from the English reports, where such delay has been held to amount to a defense, (some of which he disapproved,) were generally cases where the party taking forged paper was presumed to know the hand-writing, as in the case of an acceptor of a bill of exchange who is presumed to know the hand-writing of the drawer, or of bankers who are supposed to know the signatures of their officers, agents and customers.