## FIRST NATIONAL BANK v. JOHN E. TAPPAN, *et al.*

1. VOLUNTARY PAYMENT OF FORGED PAPER—*Effect of.* Where a bank, without instructions, pays a forged acceptance, and sends the same by mail to the firm whose names are forged as acceptors, it does not become thereby entitled to a credit for the amount thereof against the said firm.

2. DILIGENCE—*When not necessary.* Such firm is under no legal obligation to the bank to immediately examine such acceptance upon its reception, with a view to ascertain whether it is genuine or not, and is not chargeable with negligence for not discovering the forgery immediately.

3. —— *When sufficient.* It is sufficient in such case to give notice when the forgery is discovered.

4. LOSS—*By whom to be borne.* In cases where a loss occurs, and the loss can be traced to the fault or negligence of a particular party, the loss should be fixed upon such party.

5. AMENDMENT—*New Parties.* Where the district court permits an amendment to the petition, after trial, by making an additional party plaintiff, and it is apparent from the record that the defendant has not been misled, it is not error to enter judgment immediately.

6. —— *Terms of Amendment.* Where such an amendment was permitted without imposing terms on the plaintiff, this court will not modify the order (although it may seem that some terms might properly have been imposed,) unless it is apparent that material injury has been done the other party.

### *Error from Leavenworth District Court.*

JOHN E. TAPPAN brought his action against *The First National Bank of Leavenworth,* to recover a balance of money alleged in the petition to be due him upon deposits in the Bank made in his name. The Bank answered, claiming there was a defect of parties plaintiff, in this, that the moneys deposited belonged to the firm of *Tappan & Weichselbaum,* and that said *Weichselbaum* was a necessary party to the action, and claiming

also a credit for $3,000 paid on the acceptance of said *T. & W.* The principal facts in the case are stated in the opinion of the court.

The cause was tried by the court without the intervention of a jury. The court found that *Weichselbaum* was a necessary party, and allowed an amendment to be made instanter, and without terms, joining him as a co-plaintiff; and finding against the Bank, upon the ground that the supposed acceptance of *T. & W.* was a forgery, rendered a judgment in favor of the plaintiffs for $3,169.75, and costs of suit. Exceptions were duly made and preserved, and the Bank now brings the case here by petition in error.

*Clough & Wheat,* for plaintiff in error :

1. The court erred in allowing the amendment. It is not in furtherance of justice that Weichselbaum should be made party plaintiff after the trial, and judgment rendered in his favor on the issues and findings previously made.

If there was no other cause for complaint, the mere matter of costs of trying that issue should have been enough to have required the imposition of some terms before permitting Weichselbaum & Tappan to have judgment for costs by Tappan incurred in prosecuting an action which he had no right to bring alone.

2. The alleged cause of action against the Bank was, that it was indebted to Tappan for money he loaned it. As we understand the findings made by the court, the Bank has paid all of the money so deposited.

The case on its merits, as shown by the evidence and findings, is, that the Bank had what purported to be an acceptance of Tappan & Weichselbaum for $3,000, re-

ceived for collection, and paid by the bank, in good faith. After the payment had been made, Weichselbaum, having information of the facts made, no manner of objection thereto, but substantially ratified the payment.

All of the parties acted in good faith. The bank paid the money without any information that the acceptance was a forgery. Payment was made by the Bank in October; no notice of the forgery was given until February. The defendants in error should not throw the consequence of their own carelessness on the bank, particularly after having kept the acceptance for such a length of time as they did. *Price v. Neale,* 3 Burrow, 1354; 10 Wheaton, 333; 1 Binney, 27; 17 Mass., 33; 86 E. C. L. R., 395; 3 Phillips on Ev., 179.

3. Plaintiff in error was only an agent to collect the money; and therefore, after having paid the $3,000 over to its principal, The Second National Bank, of St. Louis, before notice of any mistake of Tappan's in directing payment, or of any matter tending to show that payment ought not to be made, it is not liable; and the case is not altered when we consider plaintiff in error as an agent of defendants in error, to apply that sum on the acceptance which it held when it received the direction to pay per Tappan's letter of 24th October. 52 Barb. 579; 7 Johns., 182; 1 Wend., 174; 4 Burrow, 1984; 7 Cowen, 460.

*Sherry & Helm,* and *Stillings & Fenlon,* for defendants in error:

1. There was no error in allowing a new party to be made: 4 Kas., 42; 6 Ohio St., 87; 9 id., 526; 10 id., 522; 14 id., 213.

2. The Bank was not entitled to a credit for paying the forged acceptance. The loss was occasioned when

the money was paid, and nothing which occurred after that changed the legal rights of the parties.

A banker is presumed to know the signatures of his customers. The bank was put upon inquiry, when the acceptance was presented, and was bound to know or ascertain whether it was genuine or not. 4 Dall., 234; 17 Mass., 33; 10 Wheat., 333.

It is urged, that as the draft was sent to T. & W's address on the day of its payment, and the plaintiff was not personally notified immediately thereafter, that it was a forgery, the defendants in error must sustain the loss. Notice to the bank could have done no good; it had already paid the money, and had done so at its peril. There was no negligence on the part of *T. & W.*; and the bank suffered nothing by the delay. *Weisser v. Dennison,* 10 N. Y., 68; 3 Hill, 215.

Banks are held to great diligence, and it was the duty of the bank to know or ascertain whether the acceptance was genuine or not. 17 Mass., 33; 10 Vermont, 141; 1 Hill, 287; 4 Comstock, 147; 2 John., 455.

3. Money paid by one party through a mutual mistake of facts, with regard to which both are bound to inquire, may be recovered back. 1 Hill, 287; 40 N. Y., 39; 4 Ohio St., 628.

4. The defendants in error are not estopped unless it appears from the evidence that they knew of the forgery, and confirmed it as their act. If not adopted or confirmed by them, then they are entitled to recover. 2 Pars. Notes, 592, 593.

The ratification of an act previously unauthorized must be with a knowledge of all the circumstances. 17 Mass., 1, 486, 490.

The opinion of the court was delivered by

KINGMAN, C. J.: A jury having been waived, this cause was tried by the court; and at the request of both parties special findings of fact and conclusions of law were made. All the evidence and proceedings in the cause are preserved, making a somewhat voluminous record, to which the ingenuity of counsel has been able to assign forty-three causes of error, although but two were noticed in the brief, or were pressed in argument. Still, we have carefully looked into the record to consider the other errors alleged. Most of them relate to admissions of testimony, and are not well taken, as the testimony elicited tended to throw light upon the questions at issue, and in none of them do we find cause for reversing the judgment; nor do we deem their discussion of sufficient importance to demand such labor at our hands.

I. Passing then to the two main questions which were pressed in the argument, we shall for convenience 1. LIABILITY; pay-  consider first, the one involving the real ment of foiged  subject of the controversy, as its consideration necessarily involves the statement of facts out of which the other question arose.

The subject of the controversy in this action was, whether the bank was entitled to a credit of $3,000 paid by it on a draft, the pretended acceptance of which by the defendants in error, was a forgery. The facts of the case, as found by the court, are very full and minute, and seem to be fairly supported by the evidence in the case. So much of them as are necessary to understand the grounds of the decision of this court are as follows:

Weichselbaum & Tappan in the latter part of the year 1868, and the first part of 1869, were partners doing

business at Forts Dodge and Larned in this State, keeping an account and depositing money with the plaintiff in error in the name of Tappan only. On the 21st of August, 1868, one Theodore Miller drew a bill of exchange on Weichselbaum & Tappan for $3000, payable at the bank (plaintiff in error) on the 1st and 4th November following, which was accepted by W. & T. on the 1st of September.

On the 18th of September, Miller, being indebted to a firm in St. Louis, gave them a bill of exchange drawn by himself on Weichselbaum & Tappan, of the same tenor, for the same amount, and due at the same time, and payable at the same place as the one first above mentioned, which purported to be accepted by Weichselbaum & Tappan. This acceptance was a forgery. This bill by indorsement became the property of the Second National Bank of St. Louis, and was by that bank indorsed and forwarded to the plaintiff in error, who received it on the 1st of October; and soon thereafter the bank sent a notice to Weichselbaum & Tappan, at Ft. Dodge, that the draft was there for collection.

On the 28th of October the bank received a check from Tappan for $3,000, with instructions to pay Weichselbaum & Tappan's acceptance for $3,000 due the 1st and 4th November. On the same day the bank cashed the check, and paid the amount of the draft to the Second National Bank of St. Louis, and forwarded the draft so paid by mail to Tappan at Ft. Dodge, which letter was received by Mr. Haight, the book-keeper of W. & T. at that place, and who attended to the correspondence and business of the firm at that place. Haight never informed his employers of the receipt of said draft, but forwarded it to Tappan at Fort Larned, where it was received by

the book-keeper at that place as early as the middle of November, who, supposing the acceptance to be genuine did not inform either Weichselbaum or Tappan about it until it was found on the 24th February, 1869.

When the draft was received at Ft. Dodge, and during most of the time till it was found, Tappan was absent at Ft. Larned or elsewhere, on business. Weichselbaum was absent in Europe from June, 1868, till the 6th of November, at which time he reached Leavenworth on his return. On the 3d of November, Scott & Co. presented the genuine draft first mentioned for $3,000, to the bank of plaintiff in error for payment, and it was protested for want of funds, and because the bank had no instructions to pay it. On the 6th of November, Weichselbaum having reached Leavenworth on his return from Europe heard of the dishonor of this bill and made arrangements with the bank to pay it, and was then informed as to the other draft, and what had been done with it, and said it was all right. Previous to this time, while at St. Louis, he had been told of this draft and acceptance, but not that it was a forgery, but supposed both drafts had been accepted by his firm during his absence.

About the 1st of March, 1869, and with diligence after it was found, Weichselbaum brought in the forged acceptance and tendered the same to the bank, which was received; and before the suit was brought a demand was made for the money. It is also found as a fact, and is apparent from the evidence, that Weichselbaum and Tappan, and the officers and agents of the bank, as well as the bank in St. Louis, and the firm who took the forged acceptance, all acted in good faith, in the whole transaction.

We leave out of view the promise made by the cashier of the bank, to pay the amount of the acceptance, if it was found to be a forgery; and the fact that Lucein Scott, of the firm of Scott & Co., who held the genuine acceptance, was also president of the bank; for neither of these facts imposed any obligation to pay the money; nor is it pretended that Scott acted in bad faith. Nor can we regard the statements of Weichselbaum made in, St. Louis to Ryan & Co., and in Leavenworth to the cashier of defendant's bank, as of any importance; for they were made in both instances upon the false information that the acceptance was the acceptance of his firm; and as it purported to have been made while he was absent in Europe, he could not be presumed to have any personal knowledge upon the subject. Whatever significance such declarations might have had, had they in any way contributed to give credit to the bill, or have induced the bank to pay it, need not now be determined; for it is not pretended that any action of any one was in the slightest affected by the statements so made.

The question then recurs: Which of these parties shall sustain the loss? In other words, where does the law leave it? The action was for a balance due the plaintiffs from the bank. If the bank was entitled to a credit for the $3,000 paid by it on the forged acceptance, then the judgment should have been for the defendant; if not so entitled, the plaintiffs' claim was correct, to the amount of the judgment. If the bank was entitled to this credit, when did it become so? Certainly not by the check of Tappan of the date of October 24th, for accompanying that check was a letter of instruction to pay therewith the acceptance of Weichselbaum & Tappan due Nov. 1st and 4th. By paying upon paper that

National Bank v. Tappan.

was not W. & T.'s the bank acquired no right to the money. W. & T. had a genuine acceptance due at those dates. The letter evidently had reference to the genuine acceptance. They could not foresee that a forgery would be perpetrated; or if one was, that it would be overlooked by the bank. Undoubtedly the officers of the bank supposed the letter had reference to the acceptance then in bank, and acted on that supposition; but the mistake here, which led to all the consequences, was the bank's mistake, and not the plaintiffs. It was the duty of the bank to know whether the acceptance was genuine or not. They took no steps to ascertain these facts; and out of this primary negligence has the loss occurred.

Up to this point no act of the plaintiffs had contributed to the loss. The forged acceptance was paid before it was due. If on the 4th of November the plaintiffs had been in Leavenworth, and learning of the protest of their acceptance, to meet which they had provided the funds, and had then been informed that the bank had paid out their money on a forged acceptance, and had then demanded their money at the counter of the bank, it would have been preposterous for the bank to have answered, "You have no money here; we paid it out on a forged acceptance." Or, if when the letter containing the forged acceptance reached Fort Larned by the middle of November, the forgery had been immediately discovered and the bank notified thereof, it can hardly be claimed that the loss would not fall on the bank. For the plaintiffs had done no act, been guilty of no negligence that would impair their rights. But it is claimed that in not discovering the forgery and returning

2. DILIGENCE; when and when not, necessary.

the forged draft immediately upon its receipt, the plaintiffs by their negligence therein made themselves liable

**3. Notice, on discovery, sufficient.** for the money. Good faith required the notice of the forgery to be given as soon as discovered; but what obligation' of a legal character were they under to give such notice? They were not parties to the bill. They had not paid it, nor directed it to be paid. What diligence were they bound to use in law to discover such a forgery? In *Weisser v. Dennison*, 10 N. Y., 69, where checks forged by the confidential clerk of the depositor were paid by the bank, charged to the depositor in his bank book, the book balanced, and the forged checks among others returned to the clerk who examined the account at the request of the principal, and reported it correct, and the principal did not discover the forgeries until several months afterwards, when he immediately made them known to the bank, it was held that the bank could not retain the amount of the forged checks. The court said that Weisser had done nothing which facilitated or contributed to a fraud on the bank; "the most that could be said was, that he had omitted to do that which would have enabled him to put the bank on its guard against frauds, with which his name was only an accidental circumstance, to which he had in no way contributed, and against which he was under no peculiar obligation to guard the bank. Whatever loss the bank has sustained, it has suffered from its own negligence or want of skill in matters as to which, in the first instance, it only was bound to exercise skill and diligence. He had a right to assume that the bank had discharged its own duty to itself, and was not bound to conceive it possible that the bank had charged him with money which had not been paid upon his order. He was

30

under no contract with the bank to examine with diligence his returned checks and bank book." In many respects this case is similar to the one under consideration, especially as to the principles on which it was decided; though an element in it, as to the confidence of Weisser in his clerk, and his reliance on his clerk's acts, make that a stronger case for the bank than the present one. In *Ellis & Morton v. Ohio Life and Trust Co.*, 4 Ohio St., 628, it was held that where money was paid on forged paper in a case in respect to which a party was bound to inquire, and where the defendants by their negligent failure to perform their duty contributed to induce the plaintiffs to act on the paper as genuine, the plaintiffs could recover, and that it was "sufficient to give notice when the forgery was discovered." In that case both parties were bound to exercise skill and diligence, in the examination of the paper, to ascertain whether it was genuine or not; but the plaintiffs having taken the paper on the strength of the examination made by the defendants, were held less culpable than the defendants, and entitled to recover.

In *Gloucester Bank v. Salem Bank*, 17 Mass., 32, the following rule is laid down: "In all such cases the just

4. Loss—by whom to be borne. and sound principle of decision has been, that if the loss can be traced to the fault or negligence of either party, it shall be fixed upon him. Generally, where no fault or negligence is imputable, the loss has been suffered to remain where the course of business has placed it." This seems to us a just and fair exposition of the law. It is a principle of natural justice that where a loss has happened, he through whose means it happened, should sustain it, although innocent, rather than he who is not only innocent, but wholly without the

imputation of negligence. In this case, the neglect of the plaintiff to examine into the genuineness of the acceptance, was induced by the act of the defendants. They were not bound in law or by contract to make the examination. As to this paper, there was no privity of contract between the parties. There was no neglect in giving notice of the forgery as soon as it was discovered. The non-discovery of the fraud, and the retention of the paper, would only be evidence tending in some degree, however slight or otherwise, according to the circumstances, to show that the parties accepted and treated the acceptance as genuine, but such an inference is wholly negatived in this case by the testimony, and the court so found.

The case last cited, as well as that of the *U. S. Bank v. The Bank of Georgia,* 10 Wheaton, 333, involves questions as to payments made *bona fide* in counterfeit bank notes, purporting to be of the payee's own issue, and received by the bank as cash, and afterwards discovered to be forged. The cases pretty strongly imply that in case of a payment of forged bank notes in such a case, and no immediate discovery and notice, the payment will be considered absolute; but in each of these cases the court said there was on the part of the bank taking the counterfeit notes, a degree of negligence which takes away all right to call on the party paying to make good the notes. They took in payment their own notes which they were presumed to know, and which they had greater facilities for knowing than any one else, and retained them in one case nineteen days, and in the other forty-seven days, before notice of the spurious character of the notes was given. In the latter case a distinction seems to be made between bank notes, used as money, and bills of exchange;

for Mr. Justice Story observes : " Bank notes constitute the currency of the country, and ordinarily pass as money. When they are received as payment, the receipt is always given for them as money. They are good as a tender, unless specially objected to; and they are not like bills of exchange, considered as mere securities or documents for debt." Whether there is a distinction on this point really to be made between bank notes and commercial paper, may be doubted; and unquestionably had Weichselbaum and Tappan themselves paid the forged bill, or authorized its payment, it would have been a different case, and would have brought it within the two last cases cited; but they did neither; and they were not bound to suppose that any one had paid, without authority, a claim against them that never had an existence. When the letter covering the forged acceptance reached their clerks at Forts Dodge and Larned, they had a right to assume it was what the bank represented it to be, and to so treat it; and this was all they did until subsequent correspondence revealed to them that they had twice been charged with $3,000, although they had given but one acceptance for that amount. Then their attention to the bill was challenged. It was hunted up, and its spurious character ascertained. It is not a case of money paid, and an attempt to recover it back. It was never paid, and in this as well as some other respects it differs from *Price v. Neale*, 3 Burrow, 1354. In that case the plaintiff, upon notice being sent to him of the bill being due, sent his servant to take it up and pay it. The second bill was actually accepted by the plaintiff. Both bills were forged. Upon the discovery of the forgery of the drawer's name, repayment was demanded and suit brought therefor. The court held that there could be no recovery because

of the neglect of the plaintiff in not ascertaining the genuineness of the bills before he paid them. We refer to this case with some hesitation, for what it decides has been variously understood by different courts. See *Smith v. Mercer*, 6 Taunton, 75; *Young v. Adams*, 6 Mass., 87; *Markle v. Hatfield*, 2 Johnson, 262; *U. S. Bank v. Bank of Georgia*, supra. There are two reports of the case—the one cited above, and the one in 1 Bl., 390. In *Smith v. Mercer*, DALLAS states the neglect was, " the having paid, when due diligence would have prevented such payment." The plaintiffs in error claim that the neglect was, in not giving timely notice. We are inclined to think the first is the true ground of the decision; and if so, it is against the plaintiffs in error. It fixes the neglect upon them in the first instance, and would be fatal to their defense. The bank could not have given any legal notice of the fraudulent character of the bill, that would save any of their rights against any parties thereto, had Weichselbaum & Tappan immediately upon receipt thereof by the middle of November, discovered and given notice of the forgery; and this distinguishes this case from the many cases where the giving of such notice might have saved innocent parties their recourse on others.

From a careful and extended examination of the authorities, only a few of which we have mentioned, we are of the opinion that the judgment of the court below was correct.

II. The action was brought in the name of Tappan, in whose name the deposits in the bank were made. The bank, as one of the grounds of defense, set up a defect of parties, alleging that the money deposited was the money of W. & T. During the trial some testimony was given on this point, and on the hear-

5. Defect of parties; amendment.

ing the court found that there was a defect of parties, and allowed the petition to be amended by making W. a party plaintiff, and then entered judgment accordingly. This is in strict conformity with section 139 of the code. An examination of the record shows that this was a proper case for the application of the provisions of this section. It is apparent that the real subject of the controversy was the liability of the bank for the money deposited. There could have been no injustice in permitting an amendment that would save all the cost and labor of a re-trial of the real issue of the case.

As the defect of parties was one of the issues made by the defendants, we think it would have been proper for

6. Terms of amendment. the court below to have fixed some terms upon which the amendment should be allowed, at least equal to the costs of the defendant in sustaining that branch of its defense. At most, the amount would have been trifling; and the court trying the cause was the better judge of what that amount should be. As the court permitted the amendment without fixing any terms, we are to understand that in its judgment none were justly to be made. We shall not disturb a ruling so made on such vague knowledge as this court must possess of the terms proper to be imposed. Very little testimony was given on this point, it being, positive and not controverted, and that by witnesses necessarily examined on the material issues.

The judgment of the court below is affirmed.

All the Justices concurring.